THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN CLEAVER, SUNDAELEE CLEAVER, JILL CLEAVER, and ERIC N. CLEAVER,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING [19] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 4:21-cv-00082-DBB<br><br>District Judge David Barlow |

Before the court is the Plaintiff's Motion for Summary Judgment.[1] Plaintiff, Farm Bureau Property & Casualty Insurance ("Farm Bureau"), seeks a declaration stating that it does not owe liability indemnity coverage to Brian Cleaver and Sundalee Cleaver ("the Cleavers") for the injuries their young cousin, E.C., suffered in an ATV accident on June 17, 2019, in Delta, Utah. Having considered the briefing, the court finds that oral argument is unnecessary.[2] For the reasons below, the court grants the motion.

## BACKGROUND

The Cleavers own a residence in Delta, Utah that sits on 1000 East.[3] In June of 2019, E.C. was in town from out of state to visit the Cleavers' children.[4] On June 17, two of the

---

[1] Mot. for Summ. J., ECF No. 19, filed March 17, 2022.
[2] DUCivR 7-1(g).
[3] *Id.* at 4. The address of the residence is formally 905 N 800 E. Deposition of Brian Cleaver ("B. Cleaver Dep."), ECF No. 19-2, at 7–8.
[4] *Id.* at 21.

1

Cleavers' children, B.C. and M.C., and E.C. rode two ATVs (a Polaris and a Yamaha[5])—owned by the Cleavers—to a nearby gravel pit.[6] The gravel pit is a common recreation area located north of the Cleaver's residence.[7] It is not owned in full or in part by the Cleavers,[8] and the road to access the gravel pit—1000 East—is a public roadway.[9]

While at the gravel pit, the Yamaha broke down.[10] All three children rode the Polaris back to the residence, obtained a towing cable, returned to the gravel pit, and began towing the Yamaha back to the residence.[11] B.C. drove the Polaris while E.C. sat atop the Yamaha to steer it, holding M.C. in her lap.[12] While being towed back on 1000 East, the Yamaha overturned and E.C. was injured, resulting in medical bills.[13]

The Cleaver's residence was insured by Farm Bureau from October 24, 2018, to October 24, 2019.[14] The homeowner's insurance policy ("the Policy") listed Brian Cleaver, Sundalee Cleaver, Jill Cleaver, and Eric N. Cleaver.[15]

The Policy states that "[Farm Bureau] cover[s] 'damages' that result from 'bodily injury'…'caused by' an 'occurrence' to which these coverages apply."[16] The Policy does not

---

[5] *Id.* at 19–20.
[6] *Id.* at 21.
[7] *Id.* at 14–16.
[8] *Id.* at 16.
[9] *Id.* at 18.
[10] *Id.* at 21.
[11] *Id.* at 21–22.
[12] *Id.* at 22.
[13] *Id.* at 22-23; Complaint, ECF No. 2, at 2, filed August 9, 2021.
[14] Policy of Insurance, ECF No. 2-2, at 2, filed August 9, 2021.
[15] *Id*. at 1; Mot. for Summ. J. at 5, n.17: "Jill and Eric Cleaver are Brian Cleaver's parents, and they are named on the policy because they live in a mother-in-law suite at the residence. They are not involved in the accident."
[16] Policy at 23.

provide coverage for "damages" or "medical expenses" "arising out of" the use of an "all-terrain vehicle of a utility or recreational nature" while not on an "insured location."[17]

The Policy's "Declarations pages…list or declare the property and liability exposures [Farm Bureau] agree[s] to insure,"[18] which, in this case, is the Cleavers' residence.[19] The Policy defines "insured location" as the following: the properties listed on the Declarations pages;[20] and "[a]ny premises used by you in connection with the 'insured location[]."[21] Farm Bureau brought this suit to seek relief from liability to the Cleavers for E.C.'s injuries.[22]

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] The parties do not dispute the material facts, only how the Policy applies to one particular fact—the location of the accident. They also agree that Utah law applies.[24]

"An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."[25] When interpreting a contract, the intentions of the contracting parties control.[26] It is a court's duty to determine those intentions by examining the "four corners" of the policy.[27] "Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a

---

[17] *Id.* at 19, 22.
[18] *Id.* at 8.
[19] *Id.* at 2.
[20] *Id.* at 21, ¶ A.
[21] *Id.* ¶ C.
[22] Complaint at 8.
[23] Fed. R. Civ. P. 56(a).
[24] *See* Mot. for Summ. J. at 8–9; Opp'n, ECF No. 24, at 1, filed April 28, 2022.
[25] *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).
[26] *Basic Rsch., LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 7, 297 P.3d 578, 580 (Utah 2013).
[27] *Id.*

3

whole."[28] "Policy terms are harmonized with the policy as a whole, and all provisions should be given effect if possible."[29] In general, insurers may exclude from coverage certain losses "by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."[30]

When interpreting an insurance policy, "ambiguity or uncertainty in the language of [the policy] must be resolved in favor of coverage."[31] Ambiguity exists if a provision of a contract "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."[32] If the contract is language is unambiguous, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[33] Either way, a proposed interpretation "must be plausible and reasonable in light of the language used."[34]

Applying Utah law, the court "'must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.'"[35] Decisions of the state's intermediate court of appeals may be considered.[36] Appellate court decisions from other states "'and the general weight and trend of authority in the relevant law'" also may be considered.[37]

---

[28] *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 5, 980 P.2d 685, 686.
[29] *Id.*
[30] *Id.* (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1274, 1275 (Utah 1993)).
[31] *Doctors' Co. v. Drezga*, 218 P.3d 598, 603 (2009) (quoting *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988)).
[32] *Id.* (quoting *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002))
[33] *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599, 605.
[34] *S.W. Energy Corp. v. Con'l Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999) (quoting *First Am. Title Ins. Co. v. J.B. Ranch*, 966 P.2d 834, 837 (Utah 1998)).
[35] *Marcantel v. Michael and Sonja Saltman Family Trust*, 993 F.3d 1212, 1221 (10th Cir. 2021) (cleaned up).
[36] *Id.* at 1222.
[37] *Id.* (cleaned up).

## DISCUSSION

Since "[Farm Bureau has] no duty to defend any 'suit' to which this insurance does not apply,"[38] the court must determine if the ATV accident occurred at a location where the insurance does apply, i.e., an "insured location." The two "insured locations" applicable to this case are the residence owned by the Cleavers, and any premises used by the Cleavers in connection with the "insured location."[39] The accident took place on 1000 East, a public road, and not at the residence.[40] Therefore, the question becomes simply whether, under the Policy, a public road may be a "premises" used by the insured in connection with the residence.

### I.  "Premises" in the Policy

The Cleavers urge that the task at hand depends on "the precise policy language at issue" and that an "examination of exact policy language is required."[41] The court agrees. There are three areas where potentially relevant "premises"[42] are discussed in the Policy: "Farm/Ranch premises"; "Residence Premises"; and "Insured Location." Each is discussed in turn.

#### A.  "Farm/Ranch Premises" per the Policy

The Policy defines "Farm/Ranch Premises" as "A. Land (including private approaches) you own, rent or lease primarily for agricultural use; and B. 'Farm/Ranch' structures, including residences on such land."[43] While neither of the parties argue that this definition applies, it is useful to note that these "premises" require either a physical structure ("Farm/Ranch structures")

---

[38] Policy at 23.
[39] *Id*. at 21.
[40] B. Cleaver Dep. at 22–23.
[41] Opp'n at 4–5.
[42] "Rental Premises" also are discussed in the Policy: they always involve a structure ("dwelling/townhouse or mobile home"). Policy, Property Section, at 12.
[43] Policy at 20.

5

or ownership or possessory interest in land ("Land . . . you own, rent, or lease").

### B. "Residential Premises" per the Policy

The Policy also defines "Residence Premises": "When shown as Premises in the Declarations: A. A one to four family dwelling in which you reside, including the grounds, structures and private approaches; or B. That part or unit of any condominium, townhouse, apartment or other building in which you reside."[44] The Cleaver's residence in Delta is a "Residential Premises" as are "the grounds, structures and private approaches" of the residence. This definition of "premises" does not resolve the issue here because the accident occurred approximately a quarter of a mile north of the Cleaver's residence.[45] However, like the "Farm/Ranch Premises" definition discussed previously, "Residential Premises" involve either a structure ("dwelling," "structures," "condominium, townhouse, apartment, or other building") or associated land ("grounds" and "private approaches) in which the insured has at least some possessory interest.

### C. "Insured Location" per the Policy

"Insured Location" consists of any of the following:

> A. Any premises shown in the Declarations under Insured Locations (which, here, is the Cleaver's residence: 905 N 800 E, Delta, Utah 84624); B. Any premises you buy or rent for use as a residence during the policy period other than premises used in connection with a "business." Such premises will cease to be an "insured location" on the policy renewal date unless added to the Declarations; C. Any premises used by you in connection with the "insured locations" listed above; D. Any part of a premises you do not own but where an "insured" is temporarily residing; E. Individual or family cemetery plots and burial vaults of an "insured"; F. Land owned by or rented to an "insured" for the purpose of building a one or two

---

[44] *Id.* at 22.
[45] Mot. for Summ. J. at 3, fig. 1.

family dwelling for habitation by an "insured"; G. Any part of a premises occasionally rented to an "insured" for purposes not related to "business"; H. Any "farm/ranch premises" you buy or rent in the same state as your other insured "farm/ranch premises" is an "insured location" until the end of the policy period in which you took possession; or I. Vacant land owned by or rented to you is an "insured location" until the end of the policy period in which you took possession. Land held for "business" purposes or used for "farming/ranching" is not vacant.[46]

Like the foregoing premises sections, the consistent theme of these "insured locations" involves either a structure or else land in which the insured has an ownership or possessory interest: the Cleaver's residence, "premises you buy or rent for use a residence," "premises . . . where an 'insured' is temporarily residing," "cemetery plots and burial vaults," "[l]and owned or rented," "premises occasionally rented," "'farm/ranch premises' you buy or rent," and "[v]acant land owned or rented by you."

Here, the Cleavers argue for coverage under Subpart C.: "Any premises used by you in connection with the 'insured locations' listed above."[47] They contend that because they use "the nearby gravel pit" and the public "road connecting their home to the gravel pit," they are entitled to coverage under the Policy.[48] But this is not enough, for two reasons. To begin with, the accident did not occur at the gravel pit—that the Cleavers use it or that the accident occurred on the way back from their use of it is of no particular help in determining whether the place the accident actually occurred is a "premises" under this Policy. Of course, the Cleavers cite their use of the gravel pit for purposes of the "in connection with" language in Subpart C. ("Any premises used by you in connection with the 'insured locations' listed above"), but the "in

---

[46] Policy at 21.
[47] Id.
[48] Opp'n at 5.

connection with" language matters only if the place where the accident occurred was a "premises." As discussed next, there is no reasonable basis for concluding it was.

There is no support in the Policy for the idea that a public road can be a "premises." The Cleavers do not identify anywhere in the Policy where the word "premises" is used in a way that goes beyond a structure or land that the insureds own or in which they have a possessory interest. And, as noted above, there are numerous instances of the term in the Policy that clearly apply to structures or land in which the insured has an interest. Under Utah law, "[p]olicy terms are harmonized with the policy as a whole."[49] Because the policy consistently uses the term "premises" to mean either a structure or, alternatively, land in which the insured has an ownership or possessory interest and there is nothing in the Policy itself suggesting the possibility that a public road could be a "premises," the court concludes that the Cleavers' proposed reading is not reasonable. To be clear, the court does not find that the term "premises" in the Policy is necessarily limited to land in which the insured has an interest or to a structure. Instead, the court finds only that given the specific policy language here, it would not be reasonable to interpret the homeowners' policy to cover a recreational motor vehicle accident on a *public* road.

### II. The Usual Meaning of the Word "Premises" Does Not Support Defendants' Interpretation.

As noted earlier, "[c]ourts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole."[50] The Utah Supreme Court

---

[49] *Utah Farm Bureau Ins. Co.*, 980 P.2d at 686.
[50] *Id.*

has used common dictionary definitions[51] as well as Black's Law Dictionary[52] in assessing ordinary or usually accepted meanings.[53]

Ordinary dictionary definitions of "premises" do not support Defendants' proposed definition of "Premises." According to the Meriam-Webster Dictionary, "premises" is "a tract of land with the buildings thereon; a building or part of a building usually with its appurtenances (such as grounds)."[54] Per *Black's Law Dictionary*, "premises" is "[a] house or building, along with its grounds[.]"[55] None of these common uses of "premises" include anything like a publicly-owned road. Therefore, the usually accepted meaning of the word "premises" would not apply to a public road.

### III. No Utah Homeowners' Insurance Case or Persuasive Case from Another State Has Found a Public Road to Be a "Premises."

One Utah Appellate Court case, *American Nat. Property and Cas. Co. v. Sorensen*, comes close to addressing the issue. In *Sorensen*, a teenager was riding an ATV in a common area of the residential subdivision in which his mother owned a residence covered by a homeowner's insurance policy.[56] As part of the covenants, conditions, and restrictions ("CC&Rs") of the subdivision, the mother possessed an ownership interest in the common areas.[57] *Sorensen* noted that courts in a number of other states had adopted many different tests for determining whether a location is used in connection with the insured residence.[58]

---

[51] *Glenn v. Reese*, 2009 UT 80, ¶¶ 9-10, 13, 225 P.3d 185, 188–89.
[52] *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 27, 367 P.3d 994, 1002.
[53] *Id.* ("As we have discussed, when interpreting a contract, we generally give each term its plain and ordinary meaning.").
[54] *Premises*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/premise..
[55] *Premises*, Black's Law Dictionary (11th ed. 2019).
[56] *Am. Nat. Prop. & Cas. Co. v. Sorensen*, 2013 UT App 295, ¶ 3, 362 P.3d 909, 910–11.
[57] *Id.* at 916.
[58] *Id.* at 914.

Ultimately, the court concluded that the insured's "ownership interest in the area on which the accident occurred is determinative here," though even then, the divided court found the issue to be a "close call."[59]

But in this case, the Defendants do not have an ownership interest in the public road, 1000 East, on which the accident occurred. As a result, *Sorensen* is not factually apposite. However, the fact that the court found the case to be a "close call" even with the insured's ownership interest, and that the dissent did not think even the ownership interest was enough for coverage, does not increase the prospects for the argument here that a public road is a "premises."

Additionally, Farm Bureau has cited a number of cases finding, for a variety of reasons, that public roads were not "premises" or "insured locations" for purposes of homeowners insurance coverage: the "contention that the accident on the public cul-de-sac in front of [the] house should be covered cannot be squared with the case law";[60] the argument that a "county road" could be a "premises" was not reasonable;[61] "public street" was not an insured location;[62] and a "public roadway" was not a "premises" under the policy or ordinary use of the word.[63] Though these cases do not control the result here, they are instructive.

By contrast, none of the cases cited by the Cleavers found that a public road qualified as a "premises" under the policies they were examining; they invariably involved things like a private trail beginning on the insureds' land and ending on adjacent private property,[64] a private

---

[59] *Id.* at 916.
[60] *Nationwide Mut. Fire Ins. v. Jones*, 695 F.Supp.2d 978, 985 (D. Arizona 2010).
[61] *State Farm Fire v. Junker*, 2015 WL 12585906, *2 (N.D. Ok. 2015).
[62] *Schelmety v. Yamaha Motor Corp.*, 193 So.3d 194, 202 (La. Ct. App. 2016).
[63] *Indiana Ins. Co. v. Dreiman*, 804 N.E.2d 815, 819–20 (Ind. Ct. App. 2004).
[64] *Nationwide Mut. Ins. v. Prevatte*, 423 S.E.2d 90, 91 (N.C. Ct. App. 1992).

"wooded path off the road,"[65] a trail on private property,[66] or a private field adjacent to the insured's residence.[67] Moreover, at least one of the cases cited by the Cleavers expressly reached its decision involving an accident on privately owned land by distinguishing another case "which merely stands for the proposition that a public street is not an insured location."[68] Indeed, the court is unaware of any case—binding, persuasive, or otherwise—that has held that a public road actually was a "premises" for purposes of homeowners' insurance coverage.

The court need not and does not hold that public roads are categorically excluded from being "premises" under homeowners' policies generally. But given the language in this particular policy (where premises generally means either land in which the insured has an ownership or possessory interest or else some structure), the fact that the usual meaning of "premises" does not encompass a public road, and the absence of any binding (or even persuasive) case law finding that a public road is a covered "premises" under any homeowners' policy (much less one with the same language here), the outcome must be summary judgment for Farm Bureau. This represents the court's prediction of what Utah's highest court would do if they were confronted with this precise fact pattern.[69]

## ORDER

For the reasons stated above:

1. Plaintiff's Motion for Summary Judgment is GRANTED[70];

---

[65] *Farmers New Century Ins. Co. v. Angerson*, 2008 WL 238622 at *14 (M.D. Pa. 2008).
[66] *Allstate Ins. Co. v. Drumheller*, 185 Fed.Appx. 152, 159 (3d Cir. 2006).
[67] *State Farm Fire and Cas. Co. v. MacDonald*, 850 A.2d 707, 708 (Pa. Sup. Ct. 2004).
[68] *Prevatte*, 423 S.E.2d at 93.
[69] See *Marcantel v. Michael and Sonja Saltman Family Trust*, 993 F.3d at 1221.
[70] Mot. for Summ. J., ECF No. 19, filed March 17, 2022.

2. The Court declares that the Policy of Homeowner's Insurance # 8100675[71] does not obligate Plaintiffs to defend or indemnify Brian Cleaver, Sundalee Cleaver, Jill Cleaver, or Eric N. Cleaver for the injuries suffered by E.C. in the accident on June 19, 2019.

Signed November 1, 2022.

BY THE COURT

_____
David Barlow
United States District Judge

---

[71] Policy of Insurance, ECF No. 2-2, at 1, filed August 9, 2021.